The CITY OF HOUSTON, Appellant,

v.

Victoria DANIELS, Appellee.

No. 14–00–01096–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 6, 2001.

Rehearing Overruled Feb. 21, 2002.

---

Thomas Rodriguez, Andrea Chan, Houston, for appellants.

Bartholmew C. Okonkwo, Houston, for appellees.

Panel consists of Justices FOWLER, SEYMORE and Senior Chief Justice MURPHY.*

## OPINION

PAUL C. MURPHY, Senior Chief Justice (Assigned).

The City of Houston (City) appeals the trial court's denial of its motion for summary judgment.[1] On appeal, the City

---

* Senior Chief Justice Paul Murphy sitting by assignment.

1. Ordinarily, appellate courts do not have jurisdiction over a denial of a motion for sum-

claims its motion for summary judgment should have been granted because (1) appellee Victoria Daniels failed to give the City proper notice under the Texas Tort Claims Act or the City of Houston Charter, and (2) Daniels failed to demonstrate the City waived sovereign immunity. We affirm.

### Facts

On November 30, 1996, Officer Tellez of the Houston Police Department was responding to a Priority Two dispatch for an incident involving domestic violence. While driving to his destination, Tellez collided with the rear of a Metropolitan Transit Authority (Metro) bus. The Metro bus, which was driven by Daniels, was stationary; passengers were boarding and exiting at a designated stop. After the impact, Tellez's car traveled across several lanes of traffic and a median before coming to a stop. Daniels filed suit against the City for injuries sustained in the accident.

The City filed a motion for summary judgment contending it is immune from suit because its employee, Officer Tellez, is entitled to official immunity. The City also claims that Daniels has waived any claim under the Texas Tort Claims Act by failing to give formal written notice of her claim against the city. Daniels contends the City had actual notice of Officer Tellez' tortious conduct. The trial court denied the City's motion.

### Standard of Review

 In reviewing the trial court's denial of a motion for summary judgment, we apply the same standard of review as we do for the grant of a summary judgment. *See Ervin v. James,* 874 S.W.2d 713, 715

(Tex.App.—Houston [14th Dist.] 1994, writ denied). The function of a summary judgment is the elimination of patently unmeritorious claims or untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952). For defendants, as movants, to prevail in the summary judgment, they must either disprove at least one necessary element of the plaintiff's theory of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Peeler v. Hughes & Luce,* 868 S.W.2d 823, 827 (Tex. App.—Dallas 1993), *aff'd,* 909 S.W.2d 494 (Tex.1995). When a defendant moves for summary judgment on an affirmative defense, like official immunity, the defendant must conclusively prove each element of the defense as a matter of law. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). We view the summary judgment proof in the light most favorable to the nonmovant, and all doubts as to the existence of a genuine issue of material fact are resolved in the nonmovant's favor. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985).

### Notice of Claim

 The Texas Tort Claims Act requires a claimant to provide a governmental unit with formal, written notice of a claim against it within six months of the incident giving rise to the claim. The formal notice requirement does not apply, however, if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged. TEX. CIV. PRAC. & REM.CODE § 101.101. For a governmental entity to

---

mary judgment. *Schlipf v. Exxon Corp.,* 644 S.W.2d 453, 454 (Tex.1982). However, section 51.014(5) of the Texas Civil Practice and Remedies Code provides that the denial of a

motion for summary judgment may be appealed if it is based on an assertion of qualified immunity. *City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993).

have actual notice, it must have knowledge of (1) a death or injury; (2) its alleged fault producing or contributing to the death or injury; and (3) the identity of the parties involved. *Cathey v. Booth*, 900 S.W.2d 339, 340 (Tex.1995). The existence of actual notice is a question of fact. *Dinh v. Harris County Hospital District*, 896 S.W.2d 248, 253 (Tex.App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.). Notice can be imputed to the City by an agent or representative who has a duty to gather facts and investigate. *City of Galveston v. Shu*, 607 S.W.2d 942, 946 (Tex.App.—Houston [1st Dist.] 1980, no writ).

The City's summary judgment proof includes excerpts from the depositions of Officer Mike Moore, who investigated the accident, Officer Tellez, and the affidavit of Rolando Saenz, a Houston Police Department accident investigator. Both the City and Daniels included copies of the accident reports in their summary judgment proof. Investigating Officer Moore opined that the accident was caused by the unidentified driver of a white van who pulled out of a nearby parking lot. Officer Tellez swerved to miss the van and hit the bus. In his affidavit, Rolando Saenz averred that Officer Tellez's actions were reasonable and prudent. According to the police report, Officer Tellez stated that prior to the collision, his speed was approximately sixty miles per hour and approximately forty-eight miles per hour at the time of impact. The posted speed limit was thirty-five miles per hour. The accident investigator reported property damage to the bus and police car was estimated at approximately $9000.

Daniels filed a response to the motion for summary judgment and attached a Houston Police Department motor vehicle accident report, which showed eleven people were injured in the accident and that Officer Tellez was exceeding the posted speed limit at the time of the accident. Therefore, Daniels has presented a fact issue with regard to whether the City received actual notice of her claim.

### Waiver of Sovereign Immunity

Under the doctrine of sovereign immunity, the City is not liable for the torts of its agents or officers unless there is a constitutional or statutory waiver of immunity. *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex.1989). The limited waiver of sovereign immunity is set forth in section 101.021 of the Texas Tort Claims Act, which provides:

A governmental unit in the state is liable for:

(1) property damages, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal property or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

Sovereign immunity protects governmental entities from liability whereas official, or qualified, immunity protects individual governmental employees. *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex.1995). Governmental employees are protected by official immunity when

they perform discretionary functions in good faith and within their authority. *Id.* at 652. Where a governmental employee has no liability because of official immunity, the governmental entity is not liable under section 101.021 of the Tort Claims Act for that employee's negligence. *Id.* at 653–54.

■■■ The parties agree that Officer Tellez was acting within his authority. Therefore, we turn to whether the summary judgment proof conclusively establishes Tellez was performing a discretionary function while operating his patrol car. Unlike high speed chases or traffic stops, operating a car in a non-emergency situation does not involve personal deliberation or the exercise of professional expertise, decision, or judgment. *Woods v. Moody*, 933 S.W.2d 306, 308 (Tex.App.—Houston [14th Dist.] 1996, no writ). To the contrary, driving a car is ministerial because it requires a person to perform in a given state of facts and in a prescribed manner in obedience to the method of legal authority, without regard to the propriety of the act being done. *Burgess v. Jaramillo*, 914 S.W.2d 246, 249 (Tex.App.—Fort Worth 1996, no writ). Thus absent special circumstances that suggest the officer was performing a discretionary function, such as engaging in a high speed chase, an officer driving a motor vehicle while on official, non-emergency business is performing a ministerial act. *See City of Lancaster v. Chambers*, 883 S.W.2d at 655.

On the issue of whether Officer Tellez was operating his vehicle on emergency business, the parties squarely oppose each other. Officer Tellez was responding to a Priority Two call. According to the Houston Police Department General Order regarding response priorities:

Priority Two calls deal mainly with in-progress property crimes and/or a threat to human welfare, and assume that if not in-progress, the event recently occurred, or response to the scene is urgent. Standard response to Priority Two calls is Silent, however, if the situation clearly warrants the use of emergency equipment, the officer had [sic] the prerogative to use that mode, but that decision must be communicated verbally to the dispatcher. Officers are reminded that Priority Two calls may be held in queue for ten minutes prior to dispatch. Obviously, an expedited response at that point in time would probably be ineffective. Additionally, the time delay in reporting the incident to the Emergency Communications Division is important information that the officer should consider when determining the appropriate response posture. The responding officer will proceed directly to the scene, obey all traffic laws, (unless utilizing red light and siren), and not stop any traffic violators.

Officer Mike Moore testified that Tellez's response to the domestic violence call required an emergency response. Daniels includes a copy of the report prepared at the time of the accident that states the officer was not responding to an emergency. Officer Tellez admitted that he was going sixty miles per hour prior to the collision. We conclude this evidence is sufficient to raise a fact issue regarding waiver of sovereign immunity.

We appreciate the instrumental value of granting immunity to peace officers for their official actions. Moreover, we are aware of the importance the legislature regards governmental immunity and recognize the extent to which forcing municipalities to incur the expense of a trial will defeat the doctrine's purpose. However, the parties dispute fact issues that are pivotal to the City's affirmative defense. As the trial court correctly perceived, there are fact issues precluding summary

judgment. Accordingly, we affirm the judgment of the trial court.

WANDA McKEE FOWLER, Justice, concurring and dissenting.

I write separately to concur and clarify one point in the majority opinion and to dissent on the remainder of the opinion.

I agree with the majority that the summary judgment standard applies to this case because the City chose to use a motion for summary judgment as the vehicle to raise its jurisdictional issue. By choosing this vehicle, the City both limited the way in which it could present evidence and subjected itself to a higher standard of review. *Bland Ind. School Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000) (when deciding a plea to the jurisdiction, a court is not required to look only at pleadings, but may consider evidence, and must do so when necessary to resolve jurisdiction); *Id.* (the question of subject matter jurisdiction is a legal question and thus is reviewed de novo). Had the City filed a plea to the jurisdiction, it could have presented live testimony and this court would have reviewed the decision by a de novo review, not the traditional summary judgment standard of review. *Bland,* 34 S.W.3d at 554–555; *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). Thus, I concur in the majority's statement of the standard of review in this case, but note that this standard may not always apply.

### Notice of Daniels' Claims

This leads me to the rest of the opinion from which I dissent for several reasons. The major reason I dissent is that I disagree that the City had actual notice of Ms. Daniels' claim. The majority holds that Ms. Daniels raised a fact issue as to actual notice because (1) Officer Tellez was

exceeding the speed limit by 25 miles an hour and (2) rear-ended Metro's bus.[2] However, in the jurisdictional world, actual notice turns on several key facts. Those facts are absent in this case. To determine what is required and what is absent, we must first look to the relevant statutes.

### Notice Required by Statute.

The City of Houston contends that Daniels failed to give it proper notice under the Texas Tort Claims Act or under the City of Houston Charter. Section 101.101 of the Tort Claims Act requires that, within six months of the incident underlying the claim, a governmental unit be given written notice of a claim against it. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 1997). The purpose of the notice requirement is to ensure a prompt reporting of claims-while the facts are fresh and conditions remain substantially the same-to enable the governmental unit to investigate the merits of a claim. *City of Houston v. Torres,* 621 S.W.2d 588, 591 (Tex. 1981). Moreover, if a claimant is suing a municipality, the legislature authorized the City to establish an even shorter time deadline for notice, which it did, enacting its own ordinance declaring that notice must be given within 90 days of the incident. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(b) (Vernon 1997); CITY OF HOUSTON CHARTER, Art. IX, § 11; *Torres,* 621 S.W.2d at 592.

There is no dispute here that Daniels failed to give formal notice. Rather, Daniels alleges that the City had actual notice. The statute provides that the governmental unit has actual notice if it has "notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged."

---

**2.** Tellez was responding to a domestic violence incident involving a weapon. However, according to police department policy, unless

he chose to use his siren and lights, he was required to obey all traffic laws.

Tex. Civ. Prac. & Rem.Code Ann. § 101.101(c). However, our supreme court, in interpreting this section has held that more is required than mere notice that someone has been injured. The supreme court has stated that actual notice exists if the governmental unit has actual notice of (1) a death, injury, or property damage occurring; (2) *the governmental unit's alleged fault producing or contributing to the death, injury, or property damage;* and (3) the identity of the parties involved. *Id.* at 101.101(c) (emphasis added); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995) (per curiam). Actual notice must be received in a timely manner; here, 90 days after the incident underlying the claim. *Huffine v. Tomball Hosp. Auth.,* 979 S.W.2d 795, 797 & 800 (Tex.App.—Houston [14th Dist.] 1998, no pet.). Mere notice that an incident has occurred, however, is not enough to establish actual notice. *Putthoff v. Ancrum,* 934 S.W.2d 164, 173 (Tex.App.—Fort Worth 1996, writ denied). In determining whether the City had actual notice, we look to two things: the allegations in Daniels' petition and the evidence presented to the court that bears on notice. As noted earlier, the only dispute here is whether the City had actual notice of its alleged fault producing or contributing to Daniels' injuries

### Daniels' Allegations

Turning first to Daniels' petition, we see that in her fourth amended petition-filed after the City moved for summary judgment but eight days prior to the summary judgment hearing—she alleges that the City had actual notice of the accident and her injury through the Police Department's immediate investigation of the scene of the accident. She states that she actually told the chief investigating officer that she sustained an injury in the accident, and that the City knew she was taken to the hospital in a private vehicle. Throughout her petition, Daniels alleges

facts indicating that Tellez was operating his police vehicle at an excessive rate of speed without using his lights or sirens. In fact, she alleges that (1) due to the force of the impact, the parked Metro bus was pushed forward at least 8 to 10 feet, and (2) Tellez was traveling at a speed well in excess of 80 miles per hour in a 35 mile per hour speed limit zone, but was not using his lights or sirens. Daniels alleges that because Tellez was negligently speeding, in violation of City policies, she was injured. Neither the petition, nor any other evidence, alleges or shows that Daniels told anyone at the accident scene that Tellez was responsible for her injuries.

### Evidence Included with the Motion for Summary Judgment

The following evidence, which is contained in the record and was presented to the trial court, also bears on the issue of actual notice. Several police officers were called to the scene to investigate the accident. Officer Mike Moore, the chief investigating officer, reported that Daniels was at the scene of the accident. The accident investigation report states that Daniels was taken to a private physician, and that she had a possible injury.

The investigation report reflects that Daniels told Officer Moore, the chief investigating officer on the scene of the accident, that she was southbound on MLK, and had stopped at the bus stop to pick up some riders, when her bus was hit from behind by Tellez.

The police department investigated the accident. It found that Tellez had no fault in causing this accident. The report concludes that the sole cause of the accident was that a white van pulled out into traffic, causing Tellez to evasively swerve, and then hit the Metro bus. Witnesses' remarks, found in the accident investigation report, also place the fault on the driver of

the white van. In fact, no witness statements found in the investigation report placed blame on Tellez. Tellez's separate accident report form states that he was traveling about 60 miles per hour in a 35 mile per hour speed limit zone at the time of the accident. The report further states that he believed he slowed his patrol car to approximately 48 miles per hour at the time of impact. When the Traffic and Accident Division of the Houston Police Department reviewed these reports, though it could have found both Tellez and the driver of the white van at fault, it found Tellez had no fault in the accident, and did not recommend any disciplinary actions.

Outside of the evidence Daniels directs us to, we note that the police investigation report, as well as Officer Tellez's report detailing the accident, state that Tellez was speeding at the time of the accident and, in violation of Police Department protocol, did not have on his sirens and lights.[3]

The City does not contest that it knew of Daniels' injury and identity. The City contests whether it had actual notice of its alleged fault in producing or contributing to her injury. To support her claim that the City had actual notice of its alleged fault, Daniels points only to the police investigation report I mentioned earlier. In her brief, Daniels maintains "this statement [clearly] demonstrates that [Daniels] told Officer Moore that Officer Tellez was at fault in the accident."

## Does this Evidence Support a Finding that a Fact Issue Exists as to Actual Notice?

Daniels and the majority claim that this evidence is sufficient to raise a fact issue. I disagree. Although the existence of actual notice is a question of fact best determined by a jury, *Dinh v. Harris County Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.), there is no fact issue unless the evidence is of sufficient probative force to raise a fact issue. *Gaskin v. Titus County Hospital Dist.*, 978 S.W.2d 178, 180 (Tex.App.—Texarkana 1998, pet. denied). Here, to raise a fact issue, Daniels

---

**3.** We also note that in the summary judgment proof, there are copies of "courtesy cards" with Metro's logo on them. These cards were filled out by witnesses of the accident. Five out of 11 of the people filling out these cards place the blame for the accident on Officer Tellez. While these cards indicate that some witnesses placed blame on the City of Houston, they do not indicate that the City knew of these witnesses. Metro is a political subdivision of the State of Texas, not the City of Houston. *Metropolitan Transit Auth. v. Plessner*, 682 S.W.2d 650, 651 (Tex.App.—Houston [1st Dist.] 1984, no writ). Absent proof of an agency relationship, there is nothing to indicate that Metro, a political subdivision of the State of Texas, relayed this message to the City, or had any duty to report its findings to the City. Actual notice may be imputed to the governmental unit only when an agent or representative of the entity charged with a duty to investigate and report to the governmental unit receives the three elements of actual notice. *Dinh v. Harris County Hospital Dist.*, 896 S.W.2d 248 (Tex.App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.); *Texas Tech University Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 412 (Tex.App.—El Paso 1994, writ denied); *Davis v. Mathis*, 846 S.W.2d 84, 87–88 (Tex.App.—Dallas 1992, no writ).

Additionally, Daniels points us to the existence of a settlement offer from the City of Houston to Metro. She argues that this offer demonstrates the City had notice of at least some fault in the incident. However, in her brief, Daniels stipulates that during the summary judgment hearing, she withdrew the evidence of the settlement agreement. Thus, it is not properly before us for our review. Nevertheless, we have looked over the settlement offer. We note that the settlement document is not dated, and thus is no evidence that the City had timely actual notice under the notice statutes. *Huffine*, 979 S.W.2d at 797 & 800.

must have presented some evidence to raise a fact issue that the City had actual notice *of its culpability.*

I find no evidence or allegations showing that the City had actual notice of its culpability. When the police department investigated, no witnesses blamed Tellez; each one put sole blame on the white van. Likewise, the police department investigators, although they could have placed partial blame on Tellez, put sole blame on the white van. Even Daniels herself was silent as to who was to blame. Although Daniels' expert blamed Tellez for the accident, the City did not have the benefit of his opinion during the 90 day notice period. It saw his opinion only after suit was filed. In short, even though Tellez was speeding, in light of the witnesses' statements which blamed the white van, the City's own extensive internal investigation putting blame on the white van, and Daniels' failure to let the City know of its alleged fault, the uncontroverted evidence affirmatively shows that the City did not have actual notice of its culpability.

Having reached this conclusion and stated my reasons for it, I want to address two points in the majority opinion and one of Daniels' arguments. The majority apparently has reached its result because it is of the opinion that the City had actual notice of its culpability simply because Officer Tellez, contrary to department policy, was speeding when he rear-ended the bus. According to the majority, a fact issue is raised as to knowledge of culpability merely because Officer Tellez was speeding and hit the bus. This simplistic approach requires one to ignore reality. It cuts off consideration of the possibility that intervening events may have caused the accident (as the police department internal investigation found happened) and it could set a bad precedent. Moreover, using this simplistic approach, the majority has com-

pletely ignored or discounted the police department's own internal investigation, which found that Officer Tellez was not at fault and found that the officer should not be punished. Such an approach also leaves the City-or any governmental entity-at a disadvantage. If a City knows that it is going to be sued over an accident, it might approach its investigation differently and it might involve different people in the investigation, such as its lawyers. But, if the City investigates the accident itself, finds no liability and does not hear from anyone else that it is liable, after the 90 day period, it is likely to close its file, assume the case is closed, and it probably will not include the costs of defending that case in its budget. Finally, the refusal to acknowledge such a report is tantamount to assuming that the investigation is suspect. That is an assumption I am not willing to make here.

Finally, this leads me to Daniels' position that the City had actual notice of its culpability simply because it investigated the accident. Adopting this approach (which the majority does not) would be equally as bad. We want governmental entities to investigate accidents. But, such a holding would discourage departments from investigating accidents-especially so if they thought a suit might be filed.

For the foregoing reasons, I write separately. I would reverse the judgment of the trial court and render this cause of action dismissed for lack of jurisdiction.