# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN


## NO. 03-02-00769-CV


**Jovon Lemont Reed and the Texas Department of Public Safety, Appellants**

**v.**

**Kristy Lynn Villesca; Carrie Dawn Melcher, Individually and as Personal Representatives of the Estate of Carolyn Weiser Galbreath, Deceased, Appellees**


## FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT NO. 11976, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING


## M E M O R A N D U M   O P I N I O N


This case concerns a fatal traffic accident involving a Texas Department of Public Safety vehicle. The Texas Department of Public Safety and Highway Trooper Jovon Lemont Reed bring this interlocutory appeal to challenge the denial of their joint motion for summary judgment based on an official-immunity affirmative defense. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (West Supp. 2003). The issue on appeal is whether Trooper Reed conclusively established the elements of his official-immunity defense, thereby shielding himself and the Department from liability. Because the Department and Trooper Reed failed to establish, as a matter of law, that Trooper Reed was performing a discretionary function at the time of the accident, we affirm the trial court's denial of summary judgment.

**BACKGROUND**

In February 2000, Carolyn Weiser Galbreath was waiting to turn left off of westbound U.S. Highway 290 when her car was struck from behind by a car driven by Jimmy Scott Mancille. Immediately following the first collision, Mancille's car was struck from behind by a Department patrol car, driven by Trooper Reed. This second impact caused Mancille's vehicle to collide with Galbreath's vehicle a second time. Galbreath died at the scene as a result of her injuries. At the time of the accident, Trooper Reed and his passenger, fellow officer Trooper Kevin James, were on their way to a traffic-accident reconstruction course at the Department of Public Safety Academy in Austin.

About two months after the accident, Kristy Lynn Villesca and Carrie Dawn Melcher (collectively "Villesca"), Galbreath's surviving children, brought suit against Mancille, both individually and as personal representatives of Galbreath's estate. The petition was later amended to include Trooper Reed and the Department as defendants. Trooper Reed and the Department then filed a joint motion for summary judgment based on the doctrine of official immunity, which the trial court denied. Trooper Reed and the Department appeal, asserting that the elements of the affirmative defense of official immunity were established as a matter of law.

**DISCUSSION**

This Court's jurisdiction to consider Trooper Reed's interlocutory appeal derives from section 51.014(a)(5) of the civil practices and remedies code. *See id.* ("A person may appeal from an interlocutory order . . . that denies a motion for summary judgment that is based on an

2

assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state.").

The same standard of review that governs the granting of a summary judgment applies to the denial of a summary judgment. *See San Antonio Express News v. Dracos*, 922 S.W.2d 242, 247 (Tex. App.—San Antonio 1996, no writ); *Harris County v. Ochoa*, 881 S.W.2d 884, 886 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The standards for reviewing a motion for summary judgment are: (1) the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material-fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). A defendant who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

Official immunity is an affirmative defense that protects government employees from personal liability. *University of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). A government employee is entitled to official immunity from suit for conduct arising from the performance of (1) discretionary duties, (2) performed in good faith, as long as the actions were (3) within the scope of the employee's authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). If it is determined that Trooper Reed is entitled to official immunity, then the Department will be immune from vicarious liability through its sovereign immunity. *See DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995) ("It would serve no legislative purpose to declare a waiver of sovereign

3

immunity when the basis of liability is respondeat superior and the acts of the employee are covered by official immunity."). Villesca concedes that Trooper Reed was acting within the scope of his authority at the time of the wreck. Therefore, we must examine whether a genuine issue of material fact exists as to whether Trooper Reed has met either the "discretionary" element or the "good faith" element of his affirmative defense.

An action is discretionary if it involves personal deliberation, decision, and judgment; an action is ministerial if it requires obedience to orders or the performance of a duty to which the actor has no choice. *Chambers*, 883 S.W.2d at 654. Absent special circumstances that suggest an officer was performing a discretionary function, such as engaging in a high-speed chase, an officer driving a motor vehicle while on official, non-emergency business is performing a ministerial act. *Texas Dep't of Pub. Safety v. Cordes*, 85 S.W.3d 342, 345 (Tex. App.—Austin 2002, no pet.) (denial of summary judgment based on official immunity affirmed where there was some evidence to show that officer was not responding to emergency); *City of Houston v. Daniels*, 66 S.W.3d 420, 425 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (summary judgment for police officer denied because a fact issue existed concerning whether domestic-violence call required an emergency response).

The appellants offer Trooper Reed's affidavit as evidence that, at the time of the accident, he was performing a discretionary act. In his affidavit, Trooper Reed states that, just prior to the accident, he was in pursuit of Mancille's red sedan because it was being driven in a reckless manner. Trooper Reed asserts that Mancille made a series of unsafe lane changes and posed an immediate threat of injury to other motorists. The appellants contend that Trooper Reed's decision

4

to follow Mancille at a close proximity was a discretionary act made with the purpose of remedying an emergency situation, by either pulling Mancille over or taking some other action.

Villesca responds that Trooper Reed was not in an emergency situation at the time of the accident. In fact, Villesca points to evidence which indicates that Trooper Reed might not have been in pursuit of Mancille at all when the accident occurred. In his affidavit, Mancille asserts that he was not driving recklessly and that he had not made any abrupt lane changes. Mancille also states that Trooper Reed's patrol car was traveling behind him "for a significant period of time, and at no time were any of his emergency lights activated." Mancille's testimony is supported by an affidavit submitted by Troy James Evanovich, a witness to the accident and the events leading up to it. Evanovich states that Mancille was not driving recklessly or changing lanes and that Trooper Reed was following Mancille very closely for a minute to a minute and a half.

Villesca also notes that Trooper Reed failed to mention that he was in pursuit of Mancille when questioned on the night of the accident. According to the deposition of Trooper Casey Goetz, the officer in charge of the accident scene, Trooper Reed did not indicate that he was responding to an emergency when questioned about the accident. In addition, Trooper Reed and Trooper James failed to mention that they were in pursuit of Mancille in their written statements from the night of the accident.

Villesca argues that, even if Trooper Reed was following Mancille, it was not an emergency situation, and his actions, therefore, were not discretionary. The affidavits of Mancille and Evanovich indicate that Trooper Reed had plenty of time to activate his emergency lights in order to pull Mancille over or at least get his attention; however, the summary-judgment proof

suggests that Trooper Reed never did so. In addition, Trooper James indicates in his deposition that he did not consider trying to catch up to Mancille's vehicle to be an emergency situation.

Indulging every reasonable inference and resolving any doubts in Villesca's favor, we cannot say that Trooper Reed met his burden to establish, as a matter of law, that he was performing a discretionary function, such as participating in a high-speed chase or responding to an emergency. *See Cordes*, 85 S.W.3d at 345.

Because we have determined that a genuine issue of material fact exists as to whether Trooper Reed has met the discretionary element of his official-immunity affirmative defense, we need not consider whether Trooper Reed was acting in good faith as a matter of law.

**CONCLUSION**

Because the Department and Trooper Reed have failed to conclusively prove all of the elements of the official-immunity affirmative defense, we affirm the trial court's order denying the motion for summary judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:  June 19, 2003

6