

# NUMBER 13-23-00077-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RAUL HINOJOSA, INDIVIDUALLY
AND ON BEHALF OF S.H., A MINOR,                    Appellant,

v.

HIDALGO COUNTY COMMUNITY
SUPERVISION AND CORRECTIONS
DEPARTMENT,                                         Appellee.

On appeal from the 92nd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Chief Justice Contreras**

Appellant Raul Hinojosa, individually and on behalf of S.H., a minor, sued appellee

Hidalgo County Community Supervision and Corrections Department (CSCD) for

damages arising from an auto accident. The trial court granted CSCD's plea to the

jurisdiction. On appeal, Hinojosa contends the trial court erred because: (1) his petition affirmatively demonstrated the trial court's jurisdiction; (2) there is a genuine issue of material fact as to whether CSCD received actual notice as required by the Texas Tort Claims Act (TTCA), *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c); and (3) official immunity does not apply. We reverse and remand.

## I. BACKGROUND

The subject accident occurred in Edinburg on July 20, 2018. In his original petition filed on June 24, 2019, Hinojosa alleged that, as he was driving eastbound on East Mile 17 ½ Road, a vehicle heading north on North M Road failed to yield the right of way and collided with him. Hinojosa alleged that the collision caused him to "veer off of the road and strike a fence," resulting in "serious injuries" to him and his four-year-old son. In his live petition, Hinojosa alleged that the other vehicle was driven by Juan Moreno, and that CSCD was vicariously liable for Moreno's negligence because Moreno was acting within the course and scope of his employment by CSCD at the time of the accident.[1]

CSCD filed a plea to the jurisdiction, arguing that the trial court lacks subject matter jurisdiction because: (1) Hinojosa did not plead facts establishing that he met the TTCA's formal pre-suit notice requirement, *see id.* § 101.101(a); (2) CSCD did not have actual notice of any injuries or damages, *see id.* § 101.101(c); and (3) Moreno is entitled to official immunity and "would not be personally liable to [Hinojosa] under Texas law." Attached to the plea were excerpts from Moreno's deposition, a police report regarding the accident, and incident reports authored by Moreno and his passenger, another CSCD

---

[1] Hinojosa's original petition named only Moreno and Hidalgo County as defendants. His live petition names only CSCD as a defendant.

2

employee.

Hinojosa filed a response, arguing: (1) the law does not require a TTCA plaintiff to plead facts showing compliance with the formal notice requirement; (2) CSCD had actual notice of his alleged damages; and (3) Moreno is not entitled to official immunity because he was performing a ministerial act, not a discretionary function. As to actual notice, Hinojosa specifically alleged that "two [CSCD] directors were notified of the collision and arrived at the scene of the collision," where they were informed that "[Hinojosa's] back was injured," that Hinojosa's son "was complaining about his neck," and that Hinojosa intended to go to the hospital with his son. As to official immunity, Hinojosa pointed to Moreno's deposition testimony that, at the time of the collision, he was on his way from CSCD's substance abuse treatment facility to the county jail, where Moreno intended to "pick up . . . a new resident that was incarcerated there" and bring him back to the substance abuse treatment facility.

By order dated February 15, 2023, the trial court granted CSCD's plea to the jurisdiction.[2] This appeal followed.

## II.    DISCUSSION

### A.    Standard of Review

Subject matter jurisdiction is essential to a court's authority to decide a case. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 331 (Tex. 2020). Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 682 (Tex. 2020).

---

[2] By a separate order, the trial court also granted a plea to the jurisdiction filed by Hidalgo County. However, as noted, Hinojosa's live petition does not name Hidalgo County as a defendant, and Hinojosa's notice of appeal states only that he is challenging the order granting CSCD's plea to the jurisdiction. Hidalgo County is not a party to this appeal.

When a plea to the jurisdiction challenges jurisdictional facts, our review mirrors that of a traditional summary judgment motion. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). We review all the evidence "in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "[W]e take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Maspero*, 640 S.W.3d at 528–29. A genuine issue exists if "the evidence is such that a reasonable jury could find that fact in favor of the non-moving party." *Smith v. Mosbacker*, 94 S.W.3d 292, 294 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). If the evidence generates a fact question on jurisdiction, dismissal on a plea to the jurisdiction is improper, and the fact issue must be resolved at trial by the factfinder. *Maspero*, 640 S.W.3d at 529.

## B.    Applicable Law

The doctrine of sovereign immunity holds that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) (citing *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)). Under the doctrine, courts lack subject matter jurisdiction over suits against governmental units, such as CSCD, unless immunity has been clearly and unambiguously waived by the legislature. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *see* TEX. GOV'T CODE ANN. § 311.034.

The TTCA clearly and unambiguously waives governmental immunity to suits for

> property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A)    the property damage, personal injury, or death arises from the

4

operation or use of a motor-driven vehicle or motor-driven equipment; and

 (B) the employee would be personally liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1).

"Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." TEX. GOV'T CODE ANN. § 311.034.

## C. Analysis

### 1. Actual Notice

A governmental unit is "entitled to receive notice" of a TTCA claim against it "not later than six months after the day that the incident giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a). Such formal notice "must reasonably describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident." *Id.* However, the formal notice requirement "do[es] not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." *Id.* § 101.101(c).

Hinojosa alleged that the trial court had subject matter jurisdiction over his suit because CSCD's governmental immunity was waived by § 101.021(1) of the TTCA. *See id.* § 101.021(1). And it is undisputed that CSCD was not provided with formal notice of his claim as contemplated by § 101.101(a). *See id.* § 101.101(a).[3] Accordingly, for the trial court to have jurisdiction under the TTCA, CSCD had to have "actual notice" that

---

[3] The police report attached to CSCD's plea stated that Hinojosa and his son were transported to Edinburg Regional Hospital, and it contains a stamp indicating that it was "released" to "Hidalgo County Adult Probation" on September 10, 2019, which is after the TTCA notice period expired.

Hinojosa received some injury or that his property was damaged. *See id.* § 101.101(c).

A governmental unit has "actual notice" under § 101.101(c) if it has "knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." *Reyes v. Jefferson County*, 601 S.W.3d 795, 798 (Tex. 2020) (quoting *Cathey v. Booth*, 900 S.W.3d 339, 341 (Tex. 1995)). To establish knowledge of an injury, the governmental entity must have "actual, subjective awareness" that a claimant has suffered some injury; it is not necessary that the governmental entity be "absolutely certain of the nature and extent of the injury." *City of San Antonio v. Cervantes*, 521 S.W.3d 390, 396 (Tex. App.—San Antonio 2017, no pet.). Knowledge of fault is established when the governmental unit has "subjective awareness connecting alleged governmental conduct to causation of an alleged injury to person or property in the manner ultimately asserted." *Worsdale v. City of Killeen*, 578 S.W.3d 57, 65 (Tex. 2019). "Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed." *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Estate of Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010); *see Worsdale*, 578 S.W.3d at 68 ("The critical inquiry is the governmental unit's actual anticipation of an alleged claim rather than subjective confirmation of its actual liability.").

Hinojosa argues that CSCD had actual notice of his claim because two CSCD officials appeared at the scene shortly after the accident and were informed of the circumstances. In his deposition, Moreno testified that CSCD director Robert Lizcano and CSCD "security supervisor"[4] Octaviano Uresti arrived on scene shortly after the accident,

---

[4] Elsewhere in the record, Uresti is identified as a "residential coordinator."

6

and Moreno "let them know what happened." Hinojosa's response to CSCD's plea to the jurisdiction included an affidavit in which he stated that he told Lizcano "that my son and I were going to the hospital because of my back and his neck." The response also included a cell phone video recording, taken at the scene by Hinojosa, which corroborates Hinojosa's account. In the video recording, Hinojosa can be heard explaining to Lizcano that the other driver "stopped . . . and then he started going again" and "hit me."[5] After Hinojosa told Lizcano that he and his son were going to the hospital, Lizcano replied that he was going to "take a couple quick photos."

The evidence attached to Hinojosa's response also included a copy of an email from Lizcano to Arnold Patrick, CSCD's executive director, explaining that "one of our vehicles was involved in an accident" and that "both staff members acknowledge that they were ok[ay]." The email did not mention Hinojosa or his son.

On appeal, CSCD argues that, "[f]rom the record, nothing indicates that [CSCD] was subjectively aware of Hinojosa's injuries." It argues that Hinojosa's remarks to Lizcano at the scene "do not sufficiently demonstrate that [it] had actual notice of the injuries he claims." It further observes that Lizcano did not indicate that he "subjectively believed" the Hinojosas had suffered injuries, and he did not take any photos of any such injuries. CSCD claims that, to hold that it was subjectively aware of the injuries, this Court "would need to find that [Lizcano] deliberately refused to photograph any of Hinojosa's injuries and deliberately omitted any mention of Hinojosa's injuries in the summation provided to the executive director."

---

[5] The record reflects that there is a stop sign on North M Road (on which Moreno was driving) but not on East Mile 17 ½ Road (on which Hinojosa was driving). Moreno testified in his deposition that he mistakenly believed the intersection was a four-way stop.

CSCD's arguments are unavailing. As noted, Hinojosa's burden at this stage was merely to create a fact issue as to whether CSCD received actual notice. *Town of Shady Shores*, 590 S.W.3d at 550. His affidavit and cell phone video recording satisfied that burden. When viewed in the light most favorable to Hinojosa, they establish that Lizcano was made aware that Hinojosa and his son had been injured and that those injuries were caused when a vehicle driven by a CSCD employee "hit" Hinojosa's car. And CSCD does not dispute that actual notice may be imputed from Lizcano to CSCD. *See Dinh v. Harris Cnty. Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.) (noting that actual notice "may be imputed to the government by an agent or representative who has a duty to gather facts and investigate").

The fact that Lizcano did not photograph any injuries at the scene does not conclusively establish that Lizcano lacked actual notice, nor does the fact that Lizcano failed to mention any injuries in his email to Patrick. Instead, a reasonable juror could find from Hinojosa's affidavit and cell phone video that CSCD had "actual, subjective awareness" that Hinojosa was injured and that CSCD was responsible for those injuries. *See Reyes*, 601 S.W.3d at 798; *Worsdale*, 578 S.W.3d at 65; *Estate of Arancibia*, 324 S.W.3d at 550; *Cervantes*, 521 S.W.3d at 396. Accordingly, Hinojosa met his burden to create a fact issue on whether CSCD had actual notice of his claim. *See Smith*, 94 S.W.3d at 294.

Hinojosa's first two issues are sustained.

## 2. Official Immunity

CSCD further argued in its plea to the jurisdiction that its governmental immunity to suit is not waived because Moreno is entitled to official immunity.

8

"Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Official immunity is an affirmative defense to suit, not a jurisdictional bar. *Id.* However, TTCA § 101.021(1) states that a governmental unit's immunity is waived for suits involving an employee's motor vehicle accident only if "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(B). Thus, "[i]f the employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government retains its sovereign immunity under [TTCA § 101.021(1)]." *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995). The burden is on the government defendant to establish all elements of the defense. *Chambers*, 883 S.W.2d at 653; *Los Fresnos Consol. Indep. Sch. Dist. v. Southworth*, 156 S.W.3d 910, 916 (Tex. App.—Corpus Christi–Edinburg 2005, pet. denied).

There is no dispute that, at the time of the accident, Moreno was acting within the course and scope of his authority as CSCD's employee. Hinojosa contends on appeal, however, that Moreno was not performing a "discretionary" act and did not act in good faith when the accident occurred. A discretionary act is one that requires "personal deliberation, decision, and judgment." *Chambers*, 883 S.W.2d at 654. On the other hand, ministerial acts are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Id.* In determining whether conduct is discretionary, we focus on whether the public official was performing a discretionary function, not on whether the

9

official had discretion to do an allegedly wrongful act while discharging that function. *See id.*

In its plea, CSCD stated that Moreno was performing a "county pickup" and acknowledged this was a "routine and required job function for Moreno as a residential monitor." That said, in his deposition, Moreno agreed with CSCD's counsel that he had the "freedom, as a CSCD residential monitor, to choose the route [he] was going to take to get to the county jail." CSCD argues that this testimony shows that Moreno was engaged in a discretionary act because he "enjoyed discretion in determining the schedule and route taken to effectuate his 'county pickup.'"

We disagree. "Unlike high speed chases or traffic stops, operating a car in a non-emergency situation does not involve personal deliberation or the exercise of professional expertise, decision, or judgment." *Harris County v. Gibbons*, 150 S.W.3d 877, 886 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Woods v. Moody*, 933 S.W.2d 306, 308 (Tex. App.—Houston [14th Dist.] 1996, no writ)). Generally, "[d]riving a car is a ministerial act because it requires a person to perform in a given state of facts and in a prescribed manner in obedience to the method of legal authority, without regard to the propriety of the act being done." *Id.* (citing *City of Houston v. Daniels*, 66 S.W.3d 420, 425 (Tex. App.—Houston [14th Dist.] 2001, no pet.)). In *Gibbons*, an officer rear-ended the plaintiff's vehicle when he was looking down at his on-board computer terminal to determine if a different vehicle was stolen. *Id.* At the time, the officer was "on his way to another job"; nevertheless, the court found that he was acting within the scope of his authority as a police officer and was performing a ministerial function. *Id.* at 886 ("Because [the officer] was operating his patrol vehicle in a non-emergency situation, he was obligated to

10

operate his patrol car in a safe manner in accordance with traffic laws and was performing a ministerial function."). Similarly, in *Southworth*, we held that a school bus driver was performing a ministerial function, and therefore was not entitled to official immunity, because she "was not under any duty to make any decision other than driving the bus." 156 S.W.3d at 917 (noting that "[t]he accident which caused appellees' injuries allegedly resulted from the manner in which the bus was being driven and not from any discretionary decision or election made by" the government employee).

This case is analogous to *Gibbons* and *Southworth*. There is no suggestion that Moreno was responding to an emergency at the time of his collision with Hinojosa, and CSCD acknowledged that Moreno was "required" to engage in "county pickups" as part of his job. The mere fact that Moreno was free to determine the route he took to the county jail does not mean that his actions were discretionary for purposes of official immunity.[6] If that were true, then practically every auto accident caused by a government employee would be shielded by immunity despite the Legislature's clear intent to waive immunity in these situations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). Instead, Moreno "was obligated to operate his [vehicle] in a safe manner in accordance with traffic laws and was performing a ministerial function" at the time of the subject accident. *Gibbons*, 150 S.W.3d at 886.

Because Moreno was not performing a discretionary duty at the time of the accident, he is not entitled to official immunity, and CSCD's plea to the jurisdiction should not have been granted on this basis.[7] Hinojosa's third issue is sustained.

---

[6] CSCD does not direct us to any evidence in the record, and we find none, establishing that Moreno had discretion to determine his "schedule" or to decline to engage in "county pickups."

[7] In light of our conclusion that Moreno was not performing a discretionary function, we need not

### III.    CONCLUSION

We reverse the trial court's judgment granting CSCD's plea to the jurisdiction. We remand with instructions to deny CSCD's plea to the jurisdiction, and for further proceedings consistent with this memorandum opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
24th day of August, 2023.

---

address whether Moreno was acting in good faith at the time of the accident. *See* TEX. R. APP. P. 47.1.