

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00299-CV

**TEXAS MILITARY DEPARTMENT**,
Appellant

v.

Rogerio **ESTRADA**, Jr., and Marta Gonzalez Estrada,
Appellees

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-24-9
Honorable Jose Luis Garza, Judge Presiding

Opinion by:  Lori I. Valenzuela, Justice

Sitting:  Lori I. Valenzuela, Justice
Adrian A. Spears II, Justice
Velia J. Meza, Justice

Delivered and Filed: August 20, 2025

REVERSED AND RENDERED

Appellant Texas Military Department ("TMD") challenges the trial court's order denying its plea to the jurisdiction. TMD's plea sought the dismissal of personal injury claims brought by appellees Rogerio Estrada, Jr. and Marta Gonzalez Estrada (collectively, "the Estradas"). We reverse the trial court's order and render judgment dismissing the Estradas' claims against TMD.

## BACKGROUND

The Estradas allege that they were injured when a vehicle driven by Private First Class ("PFC") Alexis Ulises De La Fuente collided with their car in Rio Grande City, Texas. It is undisputed that at the time of the collision, De La Fuente was a member of the Texas Army National Guard called to active duty by TMD as part of Operation Lone Star. TMD contends that De La Fuente was in Rio Grande City because he was following orders to travel from a weapons check-out location in La Joya, Texas to his assigned duty station in Roma, Texas.

On January 5, 2024, the Estradas sued TMD and the State of Texas.[1] They did not sue De La Fuente individually. TMD filed a plea to the jurisdiction, arguing that it was immune from the Estradas' claims under section 101.054 of the Texas Civil Practice and Remedies Code. After a hearing, the trial court denied TMD's plea. This interlocutory appeal followed. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

## ANALYSIS

### Standard of Review and Applicable Law

A plea to the jurisdiction is a dilatory plea that defeats a cause of action without regard for the merits of the claim. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "[W]e review a trial court's ruling on a plea to the jurisdiction de novo." *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). "When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case[.]" *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 486 (Tex. 2018). "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

---

[1] The State of Texas did not file a plea to the jurisdiction, and the trial court's order does not address the claims against it. Accordingly, the Estradas' claims against the State of Texas are not at issue in this appeal.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, our review mirrors that of a traditional summary judgment. *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 89 (Tex. 2023). Where the jurisdictional issue implicates the merits of the parties' claims, "we consider relevant evidence submitted by the parties to determine if a fact issue exists." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632–33 (Tex. 2015). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Id.* at 633. If the evidence is undisputed or does not raise a fact question, "the trial court rules on the plea as a matter of law." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). However, if the evidence raises a genuine issue of material fact on the jurisdictional issue, "then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 227–28.

### *Applicable Law*

"[N]o state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013) (alteration in original, internal quotation marks omitted). As a governmental unit, TMD is immune from suit unless the Texas Legislature expressly waives immunity. *See* TEX. GOV'T CODE § 437.001(13) (identifying TMD as "the state agency charged with administrative activities in support of the Texas military forces"); TEX. CIV. PRAC. & REM. CODE § 101.001(3)(A) (defining "governmental unit" to include state agencies); *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 926 (Tex. 2015) (per curiam). "The starting point is always the status quo: a presumption against any waiver until the plaintiff establishes otherwise." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023).

The Texas Tort Claims Act ("TTCA") waives immunity for personal injury "proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if" the injury "arises from the operation or use of a motor-driven vehicle" and "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(1). However, that waiver of immunity "does not apply to a claim arising from the activities of the state military forces when on active duty under the lawful orders of competent authority." TEX. CIV. PRAC. & REM. CODE § 101.054; *see Rattray*, 662 S.W.3d at 866 (identifying section 101.054 as one of multiple "exceptions or caveats that function as a withdrawal of the [TTCA's] waiver" of immunity).

We review questions of statutory construction de novo. *See, e.g.*, *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Both the Texas Legislature and the Texas Supreme Court have instructed us to narrowly construe statutory waivers of immunity. TEX. GOV'T CODE § 311.034; *Ngakoue*, 408 S.W.3d at 353. We apply a heavy presumption in favor of immunity and resolve ambiguities, if any, in favor of retaining immunity. *See Ngakoue*, 408 S.W.3d at 353; *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844, 848 (Tex. 2009); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003). If the plaintiff does not establish a waiver of immunity, Texas courts lack jurisdiction to consider his claims against a governmental unit. *See Rattray*, 662 S.W.3d at 866.

### *Application*

TMD does not dispute that the Estradas' claims arise out of De La Fuente's allegedly negligent operation or use of a motor vehicle. TEX. CIV. PRAC. & REM. CODE § 101.021(1). It argues, however, that it nevertheless retained immunity under section 101.054 as a matter of law because "[a]t all times relevant to this suit PFC De La Fuente was on active duty, serving in the

Texas Army National Guard, a division of the Texas Military Department . . . and under orders, traveling in a TMD vehicle, heading to his duty station in Roma, Texas, within the scope of his employment."

As support for this argument, TMD presented the following affidavit testimony from De La Fuente:

> Prior to the accident, I had been ordered by my platoon sergeant to travel from my assigned duty location in McAllen, Hidalgo County, Texas to La Joya, Hidalgo County, Texas to check out weapons before reporting to the assigned duty location in Roma Texas. . . . We were on our way to our duty location in Roma, Starr County, Texas at the time of the incident. . . . After checking out weapons in La Joya, Texas, my platoon sergeant ordered me to travel to Roma, Texas to my assigned duty point at the "concrete canal" in Roma, Texas. . . . At the time of the January 9, 2022, accident, I was still in the process of executing my platoon sergeant's order to report to my assigned duty point in Roma, Texas. . . . The only reason for my presence in Rio Grande City, Texas on January 9, 2022 was to execute the verbal order of my platoon sergeant in support of JTF EAST Operation Lone Star.

TMD presented similar testimony from De La Fuente's passenger, Sergeant Ashley Nicole Snell. It also presented De La Fuente's and Snell's written activation orders and affidavit testimony from Colonel Theresa Cogswell, TMD's Head of Military Personnel Management, who averred that De La Fuente and Snell were "deployed with valid Orders issued by the Texas Military Department" on the date of the collision.

The Estradas did not present any evidence to controvert De La Fuente's, Snell's, or Cogswell's affidavits.[2] Furthermore, in their response to TMD's plea to the jurisdiction, they conceded that De La Fuente "was operating a vehicle leased by the [TMD]." Their response argued, however, that their claim did not "arise from the activities of the state military forces . . . under the lawful orders of competent authority" because De La Fuente was ordered to

---

[2] The only evidence the Estradas included with their response to TMD's plea to the jurisdiction was the Texas Peace Officer's Crash Report completed by the police officer who responded to the collision. The report does not contain any information about De La Fuente's military service or orders.

provide deterrence and detection support to Operation Lone Star in Roma, not to collide with the Estradas' vehicle in Rio Grande City.[3] On appeal, the Estradas further contend that De La Fuente was engaged in a ministerial duty—driving—rather than in any activities that require the exercise of discretion. They also suggest that TMD's immunity would be waived for the negligent formulation of a policy, but not for the negligent implementation of that policy. Finally, they contend that their petition established a waiver of sovereign immunity because they pleaded that De La Fuente's actions "involv[ed] conscious indifference and reckless disregard for the safety of others."

We will begin with the Estradas' assertion that TMD's immunity is waived if the evidence raises a fact question about whether De La Fuente acted with conscious indifference or reckless disregard. The statute the Estradas rely on for this assertion, section 101.055(2) of the Texas Civil Practice and Remedies Code, is commonly referred to as the "emergency exception" to the TTCA's waiver of immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.055(2); *City of Killeen–Killeen Police Dep't v. Terry*, 712 S.W.3d 101, 102 (Tex. 2025) (per curiam). Because TMD has not alleged that the Estradas' claims arise "from the action of an employee while responding to an emergency call or reacting to an emergency situation," section 101.055(2) does not apply here. *See* TEX. CIV. PRAC. & REM. CODE § 101.055(2). But when section 101.055(2) applies, it "withdraws the [TTCA's] waiver of immunity *unless* . . . the officer acted with conscious indifference or reckless disregard for the safety of others." *City of Houston v. Gomez*, — S.W.3d —, No. 23-0858, 2025 WL 1716878, at *2–3 (Tex. June 20, 2025) (emphasis in original, internal quotation marks omitted). Section 101.054, in contrast, does not place any similar limitations on its clawback of the TTCA's waiver of immunity. *Compare* TEX. CIV. PRAC. & REM. CODE § 101.054, *with* TEX.

---

[3] On this specific point, the Estradas' argument appears to focus on what the Governor ordered the Texas Army National Guard to do, rather than on what De La Fuente's commanding officer ordered him to do.

CIV. PRAC. & REM. CODE § 101.055(2). We must "assume the legislature used different language in each subsection for a reason." *City of Dallas v. Heard*, 252 S.W.3d 98, 111 (Tex. App.—Dallas 2008, pet. denied); *see, also, e.g.*, *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995).

We next address the Estradas' contention that "sovereign immunity under Texas law . . . is intended to shield discretionary duties rather than ministerial tasks." The authority the Estradas cite for this proposition holds that "[g]overnmental employees are protected by official immunity when they perform discretionary functions in good faith and within their authority." *City of Houston v. Daniels*, 66 S.W.3d 420, 424–25 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Official immunity is a common-law concept that recognizes "the necessity of public officials to act in the public interest with confidence and without the hesitation that could arise from having their judgment continually questioned by extended litigation." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424 (Tex. 2004). "Where a governmental employee has no liability because of official immunity, the [employer] governmental entity is not liable under section 101.021 of the Tort Claims Act for that employee's negligence." *Daniels*, 66 S.W.3d at 425. However, outside of certain emergency situations, a governmental employee is generally not entitled to official immunity when he is performing a ministerial task like driving. *See id.*; *see also City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994); *Woods v. Moody*, 933 S.W.2d 306, 309 (Tex. App.—Houston [14th Dist.] 1996, no writ).

But in this case, there are no grounds upon which we can properly consider whether De La Fuente himself would be protected by official immunity. The Estradas did not sue De La Fuente, and TMD did not rely on his official immunity, if any, as a basis for its own sovereign immunity. Instead, TMD argued that it was entitled to sovereign immunity in its own right under section

101.054. Section 101.054 does not contain any language suggesting the Legislature intended to limit its application to discretionary duties, and we may not insert that analysis into the statute by judicial fiat. *See, e.g.*, *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014); *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 n.41 (Tex. 2007).

Furthermore, the Texas Supreme Court has rejected the Estradas' suggested distinction between implementation and formulation of policy—at least for the purpose of determining the existence of sovereign immunity—by holding that there is no independent waiver of immunity for a claim of negligent implementation of policy. *See City of San Antonio v. Maspero*, 640 S.W.3d 523, 532–33 (Tex. 2022). While a negligent implementation of policy can support a claim against a governmental entity after a waiver of immunity has already been established, "the negligent implementation theory of liability does not itself waive immunity. . . . A plaintiff must first establish a waiver of immunity under some other provision of the Texas Tort Claims Act before he can invoke a claim of negligent implementation." *Perez v. City of Dallas*, 180 S.W.3d 906, 911 (Tex. App.—Dallas 2005, no pet.).

Finally, we must resolve the parties' dispute about the proper interpretation of section 101.054. *See* TEX. CIV. PRAC. & REM. CODE § 101.054. In construing this statute, we "look to the plain meaning of the enacted text and apply that plain meaning unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *REME, L.L.C. v. State*, 709 S.W.3d 608, 611 (Tex. 2025) (internal quotation marks omitted). "When the words read in context are clear, they determine [legislative] intent; a court must never rewrite them under the guise of interpretation." *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 41 (Tex. 2020). "If the statute is clear and unambiguous, we must apply its words according to their common meaning." *Id.* (internal quotation marks omitted).

As indicated above, section 101.054 provides that the TTCA's waiver of immunity does not apply to claims "arising from the activities of the state military forces" if those activities occurred while the servicemember at issue was "on active duty under the lawful orders of competent authority." TEX. CIV. PRAC. & REM. CODE § 101.054. "'State military forces' means the Texas military forces," TEX. GOV'T CODE § 437.001(10), and the parties agree that De La Fuente was a member of the Texas military forces at the relevant time. They also agree that he was on active duty. They disagree, however, about the meaning of "activities" and "under the lawful orders of competent authority." Because section 101.054 does not define those terms, we must give them their common and ordinary meaning. *Hegar*, 605 S.W.3d at 41.

"Activity" means, *inter alia*, "a pursuit in which a person is active." *Activity*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/activity (last visited August 11, 2025). "Under the lawful orders of competent authority" means the activity was conducted "subject to the authority, control, guidance, or instruction of" legal commands issued by "legally qualified or adequate" "persons in command." *See Under*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/under (last visited August 11, 2025); *Lawful*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/lawful (last visited August 11, 2025); *Order*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/order (last visited August 11, 2025); *Competent*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/competent (last visited August 11, 2025); *Authority*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/authority (last visited August 11, 2025). As used in section 101.054, these common meanings reasonably permit only one construction: that the Legislature intended to withdraw the TTCA's waiver of immunity for claims arising from action that an active-duty

member of the Texas state military forces is engaged in pursuant to a lawful order from qualified authority.[4]

Having determined the proper construction of section 101.054, we must apply that statutory language to these facts. *See Hegar*, 605 S.W.3d at 41. We conclude that even when viewed in the light most favorable to the Estradas, the evidence in this case does not raise a genuine fact question as to TMD's sovereign immunity. *See Garcia*, 372 S.W.3d at 635. TMD presented uncontroverted evidence that the collision occurred while De La Fuente was on active duty and actively in the process of following his commanding officer's orders to travel from one assigned duty station to another. The Estradas did not present any evidence that the orders De La Fuente was following were unlawful, that they were not issued by competent authority, or that De La Fuente deviated from them in any way.[5] As a result, the unambiguous language of section 101.054 mandates a conclusion that TMD's sovereign immunity remains intact under these facts. *See* TEX. CIV. PRAC. & REM. CODE § 101.054. Accordingly, the trial court erred by denying TMD's plea to the jurisdiction.

## CONCLUSION

We reverse the trial court's order denying TMD's plea to the jurisdiction and render judgment dismissing the Estradas' claims against TMD.

Lori I. Valenzuela, Justice

---

[4] In the trial court, the Estradas argued that this interpretation is against public policy because it would permit TMD to "do whatever they want to do and then fall back and say active duty, I'm not liable, I'm not responsible for anything." On appeal, they similarly argue this interpretation renders TMD "completely free of any legal civil consequences for actions." Because section 101.054's waiver of immunity applies only to activity conducted pursuant to a lawful order, we disagree. We note, moreover, that "the waiver of governmental immunity is a matter addressed to the Legislature, not the courts." *Salazar v. Lopez*, 88 S.W.3d 351, 353 (Tex. App.—San Antonio 2002, no pet.); *see also Fortis Benefits*, 234 S.W.3d at 649 ("It is indeed difficult to declare something contrary to public policy when state law . . . actually suggests approval.").

[5] In its reply brief, TMD argues that section 101.054's language applies to "'the activities of the state military forces'" as a whole, rather than to "the individual service member's assignment." Because both our analysis and the broader interpretation TMD advocates would leave TMD's immunity intact under the facts of this case, we need not resolve this question here.